**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**FIDELITY CAPITAL CORPORATION,
A Georgia Corporation, Defendant.**

**Commonwealth Mortgage Corporation
of America, Intervenor–Appellee.**

No. 87–8945.

United States Court of Appeals,
Eleventh Circuit.

June 18, 1991.

G. Michael Banick and Ronald T. Gold, Atlanta, Ga., for plaintiff-appellant.

Joseph R. Manning, Morris, Manning & Martin, Thomas T. Tate, Atlanta, Ga., for intervenor-appellee.

ON PETITION(S) FOR REHEARING
AND SUGGESTION(S) OF
REHEARING EN BANC

(Opinion filed January 10, 1991,
920 F.2d 827)

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and SHARP *, District Judge.

TJOFLAT, Chief Judge:

On petition for rehearing from our decision in *United States v. Fidelity Capital Corp.*, 920 F.2d 827 (11th Cir.1991) (*Fidelity II*), Commonwealth Mortgage Corporation of America (Commonwealth) asks us either to vacate our holding that the facts found by the district court were insufficient to permit a conclusion that Fidelity Capital Corporation (Fidelity) was Alfred Skiba's alter ego or, in the alternative, to remand the case to the district court to allow it to consider alternative theories for the relief Commonwealth requests. We decline to do so.

■ First, we believe that we correctly applied the standard for review of a district court's determination, under state law, that a corporation is the alter ego of its owner.[1] The basis of our decision in this case is that all of the factfindings that the district court made, taken together, plus our consideration of the record as a whole, were insufficient, as a matter of Georgia law, to support a conclusion that Fidelity was Skiba's alter ego or that Skiba abused Fidelity's corporate form. Contrary to Commonwealth's argument, the district court's conclusion that Fidelity and Skiba were alter egos is not itself an "ultimate fact" that we should leave undisturbed or accept unless clearly erroneous; this is a legal, rather than a factual, determination. *See Craig v. Lake Asbestos, Ltd.*, 843 F.2d 145, 148 (3rd Cir.1988) ("when a district court sitting in diversity applies state legal precepts to determine whether to pierce the corporate veil, the legal conclusion that it has drawn from the facts found is subject to plenary review"). If Commonwealth's contention in its petition for rehearing is correct—that we should simply accept a district court's conclusion that a company is the alter ego of its owner without requiring the district court to base that conclusion on specific findings of fact—we need not have remanded the case to the district court in *United States v. Fidelity Capital Corp.*, 888 F.2d 1344 (11th Cir.1989) (*Fidelity I*).

Second, we find that it is unnecessary to remand the case for the district court to consider Commonwealth's alternative theories for relief, as that court implicitly considered and rejected each alternative theory before it addressed whether Fidelity was Skiba's alter ego. In its complaint, Commonwealth sought an order declaring the Fidelity mortgage satisfied as of the date of the closing of the loan transaction between Commonwealth and Peachtree/Cantrell, Inc. (P/C, Inc.) and directing the Small Business Administration (SBA), as Fidelity's receiver, to place a satisfaction of mortgage on record. In support of this prayer for relief,[2] Commonwealth presented several alternative theories, in addition to the alter ego theory on which the district court based its order. Commonwealth argued that (1) Fidelity (through Skiba) made a contract with Commonwealth that Fidelity would release its mortgage; (2) Fidelity (through Skiba or Robert Dodd, Fidelity's lawyer) represented to Commonwealth that Fidelity would cancel or subordinate its

---

* Honorable G. Kendall Sharp, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. Commonwealth also claims that we erred by considering depositions not before the district court; the depositions we relied on, however, were submitted as exhibits to that court, which stated that it had "review[ed] the deposition testimony" before making its findings.

2. Commonwealth described this relief as an "injunction," an "order," a bill to "quiet title," and a bill *"quia timet."* The district court's grant of an injunction forbidding the SBA from foreclosing on the Fidelity mortgage and directing it to release the mortgage of record in essence granted each of these ostensibly different forms of relief. Because we find that none of Commonwealth's alternative theories supporting its prayer for relief have merit, we will not grant Commonwealth's request to remand the case for the district court to consider whether it should have attached a different legal label, e.g., a bill *quia timet,* to the relief it granted.

mortgage, and was therefore barred from foreclosing under a promissory estoppel theory; (3) Fidelity made some promise or representation to Commonwealth, which, if not enforced, would cause Fidelity to be unjustly enriched if it foreclosed (a restatement, in effect, of the second theory); and (4) Fidelity's mortgage was not cancelled of record because of the mutual mistake of the parties.

For Commonwealth to succeed on one of these alternative theories, the district court would have to find that Fidelity made some promise or representation to Commonwealth that it would release its mortgage. The district court explicitly found, to the contrary, that Fidelity was *not* a party to the Commonwealth–P/C, Inc. loan transaction and that Fidelity never promised to release its mortgage.[3] In its briefs, Commonwealth does not argue that these findings of fact are clearly erroneous, but instead urges that they are supported by the record. If Fidelity had been a party to the Commonwealth–P/C, Inc. loan transaction or made a promise or representation to Commonwealth, the court would have had no reason to address the alter ego theory to grant Commonwealth relief.[4]

■ Commonwealth presents only one theory for relief that is not premised on the assumption, rejected by the district court, that Fidelity promised or represented to Commonwealth that it would release the mortgage: Commonwealth argues that Fidelity's mortgage was invalid because there was *no consideration* for it or for the underlying debt. We find that it is not necessary to remand this case to resolve this point, because the district court made findings of fact, which are not clearly erroneous, that the April 12, 1982 promissory note and mortgage Townehouse gave Fidelity memorialized an antecedent debt that Townehouse owed to Fidelity, and that when Townehouse transferred the property to American which, in turn, transferred the property to P/C, Inc., both American and P/C, Inc. assumed the mortgage.[5] This is

**3.** The court stated that although "all persons involved in the loan transaction intended that Commonwealth receive a first lien position," "Skiba was not formally acting as president of [Fidelity] at the time of the loan closing," and "[Fidelity] did not affirmatively promise to release its deed."

**4.** In its briefs on appeal, Commonwealth addresses only the alter ego theory and the estoppel theory. It appears to have misconstrued the district court's holding; Commonwealth argues that the court found for Commonwealth on both promissory estoppel and alter ego grounds and asks us to affirm on both theories. Commonwealth admits, however, that estoppel in Georgia law "is predicated upon a change of position to the harm of the one of the parties who act [sic] in reliance upon the representations or conduct of the other." Although it asserts that Skiba, as president of Fidelity, "represented" to Commonwealth that it would receive a first lien position, it never urges us to hold that the district court's findings that Fidelity was not a party to the Commonwealth–P/C, Inc. loan transaction and did not affirmatively promise to release its mortgage were clearly erroneous; this holding is a prerequisite to concluding that Fidelity is estopped from foreclosing on its mortgage.

**5.** The district court specifically stated that Townehouse, before it gave Fidelity the mortgage, "owed $1.7 million to [Fidelity]." Thus, the district court found, Skiba

divided [Townehouse's] debt to [Fidelity] into three parts. Skiba assigned to each of [Townehouse's] three properties a portion of the *indebtedness owing to [Fidelity].* [Townehouse] also executed a deed to secure debt on each of the three properties. The relevant result of this complex transaction was that [Townehouse] secured a $500,000.00 debt *owing to [Fidelity]* with a deed to secure debt [the Fidelity mortgage] in the Peachtree/Cantrell property.

(Emphasis added.) Moreover, the court added, [when the Fidelity mortgage was granted], *Townehouse was indebted to Fidelity in the amount of approximately $1.7 million....* Fidelity allocated $500,000.00 of the $1.7 million debt to the Peachtree/Cantrell property. Townehouse subsequently granted Fidelity a $500,000.00 security interest in the property .... Townehouse then conveyed the property to American in exchange for American's assumption of Townehouse's $500,000.00 debt to Fidelity.... American then transferred the property to its newly formed subsidiary [P/C, Inc.] In return, [P/C, Inc.] assumed the $500,000.00 debt to Fidelity that American had, in turn, assumed from Townehouse. Thus, following these essentially paper transactions, the ... property secured ... [the] $500,000.00 [debt] assumed by [P/C, Inc.] and owed to Fidelity.

(Emphasis added; citations omitted.) The court also stated, elsewhere, that "the record indicates that Townehouse's indebtedness to Fidelity" totaled about $1.7 million.

sufficient consideration, under Georgia law, for these transactions. *See Beazley v. Georgia R.R. Bank & Trust Co.*, 144 Ga. App. 215, 241 S.E.2d 39 (1977) ("No consideration is necessary for an instrument given in payment of an antecedent obligation of any kind."); *Horne v. Harris Motor Co.*, 91 Ga.App. 844, 87 S.E.2d 350 (1955) (when employer had overpaid employee, promissory note that employee gave to employer supported by consideration; "[a]n antecedent debt is a valuable consideration for a note").

 Finally, Commonwealth argues that we should remand the case because an issue of fact remains regarding "the amount of the indebtedness." Its petition for rehearing is unclear as to which indebtedness it is referring to, but we can hypothesize three possibilities, none of which merits remand. First, Commonwealth could be referring to the amount Skiba and P/C, Inc. paid to Southeastern Land Fund, Inc. (Southeastern) from the proceeds of Commonwealth's loan to P/C, Inc. to satisfy the remaining balance on the mortgage Fidelity had given Southeastern (approximately $150,000). Commonwealth asked the district court to order the SBA to reimburse this amount to it. Essentially, Commonwealth claims that the Southeastern mortgage should have been satisfied for nothing, in order for it to receive a first lien position when it lent money to P/C, Inc. This argument is unrelated to whether the Fidelity mortgage should have been released; Commonwealth must raise this claim as a general creditor in the receivership proceeding rather than in the present intervention, or it must sue P/C, Inc. or Skiba in state court for making the payment.

Second, by the "amount of the indebtedness," Commonwealth may be referring to the sum it lent to P/C, Inc. that was secured by its mortgage on the property and individually guaranteed by Skiba. Third, Commonwealth may be referring to the debt P/C, Inc. might still owe to Fidelity on the $500,000 promissory note secured by the Fidelity mortgage; this debt was incurred by Townehouse and subsequently assumed by P/C, Inc. Because P/C, Inc., Skiba, and Townehouse are not parties to this action, and because the amounts of their debts are governed solely by state law, the instant proceeding is not the proper vehicle for either of these determinations.

The petition for rehearing and suggestion of rehearing en banc is DENIED.